Our last case for argument today is 25-1122, ProSlide Technology v. WhiteWater West Industries. Ms. Voitz, please proceed. Good morning, Your Honors, and may it please the Court. My name is Anne Voitz, and along with my partner, Rick Taché, I represent appellant WhiteWater West Industries. The US patent system requires that claims mean what they say, and that verdicts rely on fixed constructions, not post-hoc reinterpretations of the claims at issue. Here, ProSlide and the District Court both rewrote the patent claims during trial and after by selectively misapplying agreed-upon claim terms, by stretching understood structural claim terms to cover incompatible accused products, and by shifting the scope of claims post-verdict reserved jury findings. Those actions cannot stand. I'd like to address each of the alleged infringing products in order, but I'm certainly happy to answer the Court's questions. First, with respect to the 111 patent and Aquasphere, the language refers to a sliding surface concave about three axes. That, by plain language, must be entirely concave. When you put that in your brief, and when you quoted just now, you're leaving out comprising, right? Correct, because comprising can add, but it cannot subtract. And here, if you look at the prosecution history in particular and the disclaimer, it makes it very clear that, in this case, it has to be entirely concave. That's how they got around DuBetta and Stewart. They can't have made the disclaimer and then walk it back in this case. So with respect to the 783 patent, there are two issues there. It's with respect to the definition of sliding surface. The Court there initially told the jury and decided pre-trial that a sliding surface was just a surface on which the riders slide. The problem is that riders can slide on multiple surfaces. And so after the trial, what the Court said was, well, we're going to add this thing. It's going to be what's not otherwise defined. So essentially, it said, we're going to take everything else, and in order to figure out what the sliding surface is, you have to figure out all the other things and then subtract them. That is sort of a residual definition. It came unfairly after trial, and it cannot be squared with the actual language of the patent, which said that the outer lip has a height with respect to the sliding surface. If you collapse those two, then it becomes meaningless. Counsel, just following up on my colleague's question, the parties did agree about the appropriate application of the word comprising, right? They did. They agreed that comprising is including. But what the district court did here afterwards is it said that there is not just a sliding surface. There tends to be multiple sliding surfaces. But that can't be squared with the actual language here. And it also contained that there was some type of prosecution history disclaimer. Yes, ma'am, and I'd be happy to address that. Did you make that argument below? We did. Can you point me to the page, the appropriate appendix page, where that argument was? Yes, of course. I'd be happy to. So the prosecution history on appeal is raised, or sorry, below was raised at the motion for summary judgment. So appendix 5241 through 5242. Also appendix 5252 and footnote 20. And I'm also happy to provide this to the court as well in writing, if that's helpful. Also appendix 7066 through 67. I think you're going a little fast today. I'm missing some of your pages. What's the first page you want us to look at? So first for the motion for summary judgment, appendix 5241 through 5242. 5242. Also appendix. I don't have a 5241. I don't think I do. Let's see here. OK. So where did you make the argument? I want to just get to the language you want to point us to today. Sure. It said, the prosecution history also demonstrates indefiniteness of non-predetermined path. The examiner rejected the claims that eventually issued as independent claims 115, 18, and 19, based on the Dubeta reference. Pro Slade amended its claims to add this language and argued from an entry to an exit includes both the flume or trough portion, as well as the parabolic surface of Dubeta. Pro Slade thus disavowed any embodiment that did not include flume as part of the non-predetermined path and admitted even in the trough portion 316, bounded by walls and barriers, Dubeta teaches a non-predetermined path. In so doing, Pro Slade contradicted the specification which states the entry and exit features are not part of the concave sliding surface, arguing that the non-predetermined path from an entry to an exit exists on a sliding surface concave about three axes. Because Dubeta did not teach, Pro Slade claimed one half of a sphere shape with a non-predetermined path from an entry to an exit. So that's the motion for summary judgment. It was also raised at trial. That reference is at appendix 1613. And it was raised in the J-Mal brief, and that is at appendix 6969. So we do believe that we raised that issue squarely. We think that, and in any event, the prosecution is part of the intrinsic evidence that this court can consider. And we think that that resolves thoroughly any question, even if the language of the patent itself were not clear, the prosecution history and the disclaimer require reversal in this circumstance. Can you give me the page site for where the purported disclaimer is in the prosecution history? I'm sorry? Can you give me the page site for where the purported disclaimer is in the prosecution history? Yes. Which page site is that? So it's in the amendment in response to the final office action, and the remarks in support of the final office action. It says, do better sliding surface from an entry to a page. I am so sorry. It's just recorded in your brief at 32 and citing 57, 62, 63? Yes. So can I ask about that language? Is that distinguishing this prior art? It seems like it's just distinguishing this art as not featuring a concave sliding surface, right? So it's saying ours does, and theirs doesn't have a concave sliding surface. Well, it says, do better than Stewart taken alone, don't teach or suggest that the sliding surface is shaped approximating one half of the sphere. So the focus is that it is a sphere, that it's entirely concave. And here you have even ProSlide's own expert saying that when you were looking at this, there were significant portions that were convex. And if the court looks, for example, at the chart that shows that. I guess I'm wondering why this language isn't best read as saying, they don't have a sphere. They don't have a, except my concave and my convex. They don't have a half a sphere as part of their prior art. But we do. Why isn't that a fair colloquial? Because it also focused on the essence of a trough in Gubetta. And the trough is exactly the same feature that we have here, that's part of the convex structure. And there was no dispute on ProSlide's part that part of this was, in fact, convex. Their argument is not that it's entirely concave, but that it doesn't matter, that it doesn't have to be. And that is a change from their original position pre-trial. It was something that the court ultimately affirmed saying you can have multiple siding surfaces. And we think that under Vectin and Regeneron and other cases, that is misreading the word comprising. Comprising is intended to let you add things. It's not entitled to let you read out a limitation or read out part of the claim. And that's what we think that that does here. If I may speak up, I just want to make sure everybody can hear everything you're saying. Just speak a little louder. We can hear you, but I want to make sure everybody can. If I could turn to the other patent set issue here, please. I'd like to start with the question of the tailspin. So with respect to the tailspin issue, as we've mentioned, there's sort of two issues here. One is how we think about sliding surface. And two, how do we think about the outer lip with a height with respect to the sliding surface? And the problem is, as we said, with the way that the district court read it after the fact, collapsed those two terms and made them meaningless. And you can't have a spatial relationship internally if they are all the same thing. And what it did was it changed it from the original definition of sliding surface as a surface on which writers slide to one in which it's everything that's not otherwise defined that you can slide on. Even if it survives that, it fails for indefiniteness. But counsel, is that really that the district court is just doing a further clarification and not actually changing a construction? I don't think it is a clarification because it substantively changes what we're talking about here. And it makes it impossible to understand what you're talking about. I think when you read it as everything that's otherwise not defined, it changes it from a catch-all to something that's a residual. It's what's left over. And so you have to go through this process of subtraction, which is difficult given how you try to figure out what these other things are, which are also unclear. So it all collapses under its own weight. And it also faces a serious indefinite problem, as we've argued. With respect to the Orbiter product and 783, that raises Can I just get a reference? So just the indefiniteness is that you, under the clarified definition where it excludes things like the outer rim, it's that we don't know what the sliding surface is adequately. But why can't we just omit the things that are defined and then what the sliding surface is? Because they've agreed that you do slide on these other surfaces as well. So if you're simply defining the sliding surface as a place where you slide, it encompasses virtually everything. If you define it as everything that's left over that isn't otherwise defined, it's just too many steps with too many vague terms. And so that simply cannot stand. If I could address in my time before, as far as the Orbiter question and patent 783 again, this was involved the radius issue. And whether there was a radius, it was decreasing. Here's the real problem with this, is that you have, well, there are multiple problems. But with respect to this, first, both ProSlide and the district court ignored the requirement that the decreasing radius has to begin along at least the first portion of the outer lip. They focused so heavily on the language proximate that they didn't also focus on the language of along at least a first portion of the outer lip. And the court then said it was acceptable for ProSlide's expert to rely on multiple points, even though the language in the patent refers to a point proximal. It gives you three different ways to measure that, but it doesn't say that you can use multiple points. But that's exactly what ProSlide's expert did. That's what the court, after the fact, changed its mind and said, well, that is just fine. In fact, it is not. Second, the district court's post-trial construction contradicts the intrinsic evidence when he said it doesn't, when the proximate doesn't mean right at or next to. Again, that can't be squared with the language along at least a first portion. And it materially changed the scope of the claim in a way that grew out from the front lip. Well, here too, counsel, isn't really the district court just responding to your alternative argument that the measurements next to the end run increased? Like, I don't think that there's actually a change in construction, but again, it's more of a clarification. Well, I think, Your Honor, here, when you're changing proximate from near and when you're not reading the language of along at least a first portion, that is a material change that is important here. And I think what you saw was the court sort of bending over backwards. When you look even at ProSlide's expert's own measurements, he began at that first point. He didn't count those. But those measurements, when you look at that slide, clearly increase before they begin to decrease. For you to win on this issue, do you need to win on your argument that you contend it's a changed claim construction as opposed to just a clarification? No, we do not. I think we can win on multiple grounds, Your Honor. And I see, if there are no further questions, I'd like to reserve the balance of my time to ask this court to reverse. Very good, thank you for coming. Thank you.  May it please the court. I'll begin with the concave surface limitation of the 111 patent. During the Markman proceedings, there was no dispute that this term should be given its ordinary meaning. And therefore, the jury was instructed, without objection, to apply the ordinary meaning of this limitation along with the agreed-upon meaning of comprising. During the trial, ProSlide presented evidence that the Aquasphere has a sliding surface that's concave about three axes and that carries riders on a non-predetermined path from an entry to an exit. It was only after the trial, after the jury found infringement, in its post-trial motions, that Whitewater asked for a different construction, requiring the entire sliding surface to be concave without any concave... What is your response to opposing counsel's prosecution history disclaimer argument? Well, I don't agree that they properly raised that. If you look at the portion of the summary judgment motion that they pointed you to, their argument was different back then. Their argument back then was, you have to include the tubes that lead into the sphere. And they were trying to use prosecution disclaimer to essentially say you have to also include these tubes. And because these tubes are not concave about three axes, that entitled them to summary judgment. Their argument now is different. Now they're saying there's a disclaimer that precludes there from being any convex portions whatsoever in the slide. I don't believe they actually raised that at the appropriate time. But even if they did, that's not what the prosecution history states. This was a straightforward prosecution argument overcoming an obvious rejection over two references. And the argument was that neither of those references, either alone or in combination, has a shape that approximates one half of a sphere. All that means, that doesn't mean they're disclaiming all convex surfaces. That just means whatever the claim is, it requires a shape that is approximating one half of a sphere. And in this case, the jury found that the aqua sphere has a shape that approximates one half of a sphere. That's all that prosecution history stands for. So regarding the argument they raised after the trial, even if it's not waived, and I do understand that that is a discretionary doctrine, so even if not waived, it's incorrect. The claim language itself does not include any qualifiers that would require the sliding surface to be entirely or exclusively concave throughout the entire water slide feature. And the open transition phrase comprising makes that clear, that there can be other sliding surfaces beyond what's claimed, and that means convex sliding surfaces are not precluded. Now in their briefing, they focused on the fact that there's this other limitation that says, adapted to carry riders on a non-predetermined path from an entry to an exit. But that phrase, from an entry to an exit, modifies the immediately preceding phrase, which is a non-predetermined path. It does not modify concave about three axes. So splicing those two phrases together using ellipses, which is what they did in their briefing, actually changes the meaning of the claim. But even if the claim did require a sliding surface that is concave about three axes, dot, dot, dot, from an entry to an exit, the evidence presented at trial proved that the aquasphere meets this. Mr. Young, our expert, testified that riders in the aquasphere slide along the bottom surface at a giant spherical ball, which is concave about three axes. He showed videos of riders actually sliding along the sliding surface, so the jurors could see that for themselves. He performed testing using a GPS tracker on an actual aquasphere. So again, the jurors could see exactly where those riders were sliding in the aquasphere. Can I ask you about the sliding surface piece? Yes, Ron. It seems like that got some attention at argument. So the sliding surface before trial is basically defined as the surface on which riders slide, and then after trial, there's the clarification that it's actually the surface on which riders slide that's not otherwise defined. Seems like kind of a change. Is it different? And if so, what should we do about that? Your Honor, I don't think that was a change. The court was simply explaining in response to their JMAW arguments that Mr. Young's testimony was consistent with the constructions that were provided to the jury. But I guess I'm asking, the construction provided to the jury didn't include this limitation about excluding all the other defined portions. Well, it actually did, Your Honor, because remember, there's other claim limitations in the claim. They're focusing on just that one, but the claim has multiple structural limitations. And what the court held was that when that one sliding surface limitation is viewed in the context of the entire claim, it's clear or inherent that the sliding surface is distinct from the other structural components that are in the claim, such as the in-run, the out-run, the inner core portion, and the outer lip. That is how the jury was actually instructed, because the jury was instructed- Can you give us an appendix page to support up your response to my colleague? I'm sorry, Your Honor? You just indicated that it was clear how the jury was instructed on the points that you were talking about with my colleague. I was wondering if you can give us an appendix page so we can look and see if it's as clear as you say it is. Sure. Well, first of all, I would point to Appendix 129, which is the JMAW ruling where the court stated that, pursuant to the specifications and the court's claim constructions, it is understood that the sliding surface is the surface that the riders or ride vehicles slide on that is not otherwise defined. But just to make sure I understand the basic facts, the jury was told, it was given a definition of sliding surface and instruction about that, and it was told just the surface on which the riders slide, right? It was the ordinary meaning, i.e., the surface on which the riders slide. But the jury was also given the instruction to apply the ordinary meaning for all of the other claim limitations as well. And so when you apply the ordinary meaning for in-run, out-run, outer rim, and inner core portion, along with sliding surface, if you apply the ordinary meaning for all of those terms, what the court was saying is that it's inherently obvious when you do that that those structures are differentiated from each other. Why wouldn't the jury just think there's a sliding surface, it's everywhere that the riders slide, and then there's an outer rim, and that's also part of the sliding surface if you can slide on it? Because the claim specifically identifies, for instance, the outer rim is not just floating in space. It's an outer rim that defines the outer boundary of the sliding surface. So the jury had more information than just that one word. The jury had the complete claim. So I guess I'll echo my colleague's question and say what would we look to that, what's the concrete record citation we should look to to get that sentence? The jury instructions are in the appendix. And I would go to appendix page 303. And there is a list of definitions for all of the claim terms in the patent. And it's not just sliding surface. The jury was instructed to apply the definition of outer lip, which is construed to be a curved outer rim extending from the in run to the out run, the outer rim defining an outer boundary of the sliding surface. So now the jury understands what the outer boundary of the sliding surface is. They were instructed to apply the definition of curved inner lip, which is a curved rim bounding the sliding surface from the in run to the out run in an arc of at least 60 degrees. So now the jury knows what the inner boundary of the sliding surface is. And they were instructed to apply the construction of an inner core portion, which is construed to be an inner core portion of the slide feature that finds an inner boundary of the sliding surface from the in run to the out run. I wanna look with some care at the citations you're giving. So I will, but I guess let me ask the hypothetical of let's say that after I do that, I don't have the takeaway that these instructions clearly conveyed to the jury that all the things you just read off aren't part of the sliding surface. What do I do then? Well, Your Honor, I guess I would go back to the sliding surface limitation was not disputed at the trial. It was an undisputed limitation. Their expert agreed that there's a sliding surface in the accused tailspin. So the only thing that's left on appeal is their pretrial argument that the term was indefinite. That's really the only thing that's still alive in this appeal. They conceded that the claim was met under the court's construction at the trial. And so really the only thing this court should be looking at is whether they've proven their case that this claim term is indefinite, which is what they were trying to argue on Jay Mall. And the court denied that. So I think what the court ought to do is look to see whether they've made their case that this claim term is indefinite. We don't think it is. Person of ordinary skill in the art, the evidence shows, can differentiate a sliding surface from the outer lip. The outer lip is the outer boundary of the sliding surface. And the purpose of the outer lip, according to the patent, is to guide the riders around the slide and to prevent the sliders from sliding off the top of the slide. Can I ask a question? Outer boundary, does that mean it's part of the sliding surface or not part of the sliding surface? It is the outer... Yeah, I mean, if you say, this is the outer boundary of my property, that's part of your property, right? Yeah, what the patent explains... So I'm a little confused. The patent explains that the outer lip and the sliding surface join together. It's a smooth transition because the sliders can actually go up on that outer lip as it guides them around. But that outer lip continues up higher than that. In order to prevent the sliders from sliding off, it has a height with respect to the sliding surface, which means it goes up above to the point where the sliders can ride. That's why the sliders are preventing from, or the riders are prevented from flying off. The claim says it defines the outer boundary of the sliding surface. So I'm trying to understand, does that mean it's part of the sliding surface or not part of the sliding surface? When something is the outer boundary of something, that's not outside the boundaries of, right? It's the outer boundary of, not outside the boundaries of. So is it part of the sliding surface or not? It is not part of the sliding surface, Your Honor. It's a separate structure where, and there is a... If you say, if you're standing on my property and I say, this is the outer boundary of my property, do you not think that's part of my property? Well, if there was a road that ran along your property and the road would define the outer boundary of your property. So if you're in the road, you're not on your property, but if you're on the other side of the road, then I would say the road is defining the outer boundary of your property, even though the road is not your property. I think that's what this claim is talking about. When you start sliding up vertically onto that outer lip, you're no longer on the sliding surface, you're on the outer lip. But it is true that there is a smooth transition between the two. The patent makes that clear because the whole purpose of the outer lip is to guide that rider around the slide. So of course, they're gonna have to slide partially on that outer lip, but it doesn't mean they're the same surface. And the height with respect to the sliding surface makes clear that these are two different structures. The whole purpose of the outer boundary, excuse me, of the outer lip is to prevent those sliders or the riders from sliding off the top of the ride. And to do that, it has to go up above the portion where you're riding. It has to have a height with respect to the sliding surface. So it's clear that these are not the same. Before argument, I'm just curious. I'm sorry, Your Honor. Did you take a little field trip to go see one of these before argument? I have, Your Honor. I've been on them several times. That's what made it such a fun case to try. Very good. Can you also turn to the orbiter point in particular? I'm just wondering about some of these things with respect to Mr. Young's diagram and some of the measurements that were made in particular. So if we looked at, as an example, JA 7003. Let's see if I can get to that. JA 7003.   Okay. And if we look, you can see that these different lines are identified. So if we look at, what I'm gonna say is, R29-314 and R29-312, these are both measured from the same centrally located portion of the slide, right? Yes, Your Honor, because that portion of the curve has the same, so a compound curve has a radius that changes gradually. And so in that section of the compound curve, all of your radiuses are approximately 29 feet. And so you would expect when you measure the radius of that portion of the compound curve, they're gonna go to a single point. I do agree there's a decrease in radius between these two points, right? There is a, well, the radius is decreasing generally all the way from the inrun all the way to the apex of the ride. It starts at approximately 45 feet, it goes to 33.9 feet, then to 29 feet, and then it finally ends up at 21 feet. So it's a decreasing radius starting at the inrun. Now to address counsel's point, their criticism was that Mr. Young ignored the first point, which actually gets chopped off, the first radius which gets chopped off. The reason that radius doesn't matter, you can see it actually goes through the entry chute. That radius is not a radius of the slide surface or the outer rim because that's in the entry chute. He testified that the 245 foot radius is, that's the inrun, and then you can see right after that inrun, the radius begins decreasing. It goes to 33 feet, then to 29 feet, et cetera. And so the court found that that evidence supports the jury's finding that this slide has a radius that decreases proximate to the inrun, or near the inrun. Okay. My last question, this was, there seemed to be some dispute in the briefing between whether or not at times distance was being calculated on these CAD drawings versus a radius. Do you want to give us a really short answer to that? Yes, Your Honor. What their expert did is he, instead of taking radius measurements, and when you use the CAD software, this is a pretty simple thing to do. You just put your dot on where you want to measure the radius or actually two dots, and it will tell you the radius. What their expert did is he didn't use that function. He put a dot in the middle of the slide and then took distance measurements to the outer rim and said, well, these are radii. But he admitted they're actually not radii because radiuses have to be perpendicular to the curve that you're measuring, and his were not. And so the jury was entitled to decide who had the better argument there, and they concluded that our expert had the proper measurement. And Appendix 6990 is representing where you think these were the incorrect measurements and these were distance measurements? That's correct, Your Honor. 6990 is their expert's demonstrative where he used the distance function to try to prove that the pointy end of the oval actually had the longer radius, even though it clearly has the sharper curve. Okay. Thank you, Mr. Harney. Thank you, Your Honor. So I might address a few brief points on rebuttal quickly. First, with respect to the prosecution history, it was not about the non-predetermined path. In fact, the non-predetermined path was not even mentioned in the remarks in response to either the non-final or final office action. Second, in response to Judge Kovner's question and Judge Cunningham's question, at Appendix 303, if you look at the language of sliding surface, there was no reference when they defined that term. That would have referred to those other terms. It just said it's a surface on which you slide. And that was what the jury was told, that's what they followed, and that's why that verdict cannot stand. Third and finally, with respect to the increase in the first quarter with respect to the radius. First, it's not just the first point. If you look even at their own expert's numbers, it is the first three points. They talk about how you measure a compounding curve differently. But it's not something that the patent requires you to do. The patent says you take a single point. It gives you three different ways to measure it, but it doesn't let you pick multiple points in order to come up with the numbers that serve your purpose. And then finally, with respect to the diagram, if you look at the entry chute, as shown on Figure 1A, it stops at 104. When you're looking at the language of the patent and what it requires you to do, it doesn't require, you need to start near or at the entry chute. And the numbers that the expert, he started, he calculated those numbers, but that didn't work for them. They increased. They only decreased if you started later. But that can't be squared in this case with the language of the patent. And for that reason, the verdicts in this case must fall. There are no further questions. Thank you, counsel. Please take another submission. Thank you.